Teri B. Himebaugh, Esquire
220 Stallion Lane
Schwenksville, PA 19473
(610) 287-0216
PA ID 53603

Jeffrey Philip Paul, Esquire
124 E. Chestnut St.
Lancaster, PA 17602
(717) 735-7545
PA ID 10182

### IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARVA BAEZ, individually<br>And as Administratrix of the Estate of<br>LUIS VILLAFANE, deceased<br>139 Schoolhouse Road<br>Lancaster, PA 17603<br>        Plaintiffs<br><br>v.<br>**Lancaster County**<br>**50 N. Duke St**<br>**P.O. Box 83480**<br>**Lancaster, Pa. 17608-3480**<br>        AND<br>**Vincent A. Guarini, Warden**<br>**Lancaster County Prison**<br>**625 East King Street**<br>**Lancaster, Pennsylvania, 17602-3199**<br><br>        AND<br>**CORRECTIONAL OFFICER BYRD**<br>**Lancaster County Prison**<br>**625 East King Street**<br>**Lancaster, Pennsylvania, 17602-3199**<br><br>        AND<br>**CORRECTIONAL OFFICER SHEPPO**<br>**Lancaster County Prison** | CIVIL ACTION<br>NO.<br><br>**09 2745**<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

-1-

625 East King Street :
Lancaster, Pennsylvania, 17602-3199 :
:
AND :
CORRECTIONAL OFFICER PLUMBER:
Lancaster County Prison :
625 East King Street :
Lancaster, Pennsylvania, 17602-3199 :
:
AND :
CORRECTIONAL OFFICERS DOE 1-10:
Lancaster County Prison :
625 East King Street :
Lancaster, Pennsylvania, 17602-3199 :
:
AND :
CORRECTIONAL SERGEANT JACOBS:
Lancaster County Prison :
625 East King Street :
Lancaster, Pennsylvania, 17602-3199 :
:
AND :
PrimeCare Medical, Inc. :
Carl A. Hoffman, Jr., D.O., CCHP, :
President and Corporate Medical Director:
3940 Locust Ln. :
Harrisburg, Pennsylvania.17109 :
:
AND :
Dr. Robert Doe :
c/o PrimeCare Medical, Inc. :
3940 Locust Ln :
Harrisburg, PA 17109 :
:
AND :
Nurse Cindy Dickert :
c/o PrimeCare Medical, Inc. :
3940 Locust Ln :
Harrisburg, PA 17109 :
            Defendants :

# COMPLAINT

## Jurisdiction

1. This action is brought pursuant to 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments of the Constitution of the United States of America. The court has jurisdiction over the Federal Law Claims pursuant to 28 U.S.C. §1331 and §1343 and jurisdiction over the pendent State Law Claims, pursuant to the principles of pendant and ancillary jurisdiction.

2. Venue is proper under 28 U.S.C. §1391(b) because the cause of action upon which the complaint is based arose in Lancaster County, Pennsylvania, which is in the Eastern District of Pennsylvania.

## Parties

3. Plaintiff, Marva Baez, is an adult citizen and resident of the State of Pennsylvania. She is the sister of decedent- Luis Villafane and was duly appointed to act as the Administratrix of the Estate of Luis Villafane by the Register of Wills of the Court of Common Pleas of Lancaster County, Orphans' Court Division, on April 24, 2009.

4. Decedent, Luis Villafane (hereinafter "decedent"), whose date of birth was 3/24/80, was at all times material incarcerated at Lancaster County Prison, Lancaster, Pennsylvania (hereinafter "LCP"). Prior to his incarceration he was residing at 119 Springhouse Road, Lancaster, Pennsylvania.

5. Defendant, Lancaster County, is a municipality organized under the laws of the Commonwealth of Pennsylvania.

6. Defendant Warden Vincent A. Guarini (hereinafter "Guarini") was at all times material acting under color of state law and within the course and scope of his employment as warden of LCP. He was responsible for drafting, implementing and enforcing policies, and the hiring, training, supervision and discipline of correctional and medical staff at LCP. Guarini also had ultimate responsibility for ensuring the safety and well being of inmates in his custody, including but not limited to pre-trial detainees such as the decedent. Guarini is being sued in his official capacity.

7. Defendant Correctional Officers Byrd, Sheppo, Plumber, Jacobs and Doe 1-10, were at all material times acting under color of state law and within the course and scope of their employment as correctional staff with LCP. Defendant Officers Does have not currently been identified. When their identities become known, Plaintiff shall amend her complaint accordingly. Correctional officers are being sued in their individual capacities.

8. Defendant, Prime Care Medical Inc. was at all times material, acting under color of state law and within the course and scope of its employment as medical providers for inmates at LCP. They were responsible for drafting, implementing and enforcing all medical/psychological care and emergency response policies and practices at LCP. They were also responsible, through their employees, for providing prompt and adequate suicide evaluation and treatment of the inmates at LCP, including but not limited to the decedent, and for promptly responding to medical emergencies including suicide attempts at LCP.

9. Defendants, Dr. Robert Doe and Nurse Cindy Dickert, were at all times material employees of Defendant PrimeCare Medical, Inc., acting under color of state law and within the course and scope of their employment as medical providers for inmates at LCP. They are being sued in their individual capacities.

## Facts

10. The decedent, Luis Villafane, was arrested on February 28, 2008 on charges stemming from a 2001 sexual assault of a child. At the time of his death he was a pre-trial detainee entitled to the protections of the Fourteenth Amendment.

11. Shortly after being incarcerated at LCP and just a few weeks before his suicide, decedent stopped to speak to another inmate on his way to church services.

12. When the decedent stopped to speak with the other inmate he was ordered by Defendant Sgt. Jacobs to return to his cell. When the decedent objected and requested a supervisor, Defendant Sgt. Jacobs called a "code".

13. Defendant Officers Doe 1-5 responded. They threw decedent to the ground, handcuffed him and thereupon brutally assaulted the decedent causing him to sustain visible injuries, including, but not limited to a large gash on his face.

14. Immediately after the above incident the decedent was admitted to LCP's mental health unit and placed on suicide watch.

15. On November 19, 2008 the decedent was taken off suicide watch by Defendant Nurse Cindy Dickert (hereinafter "Nurse Dickert"), Defendant Dr. Robert Doe (hereinafter

"Dr. Doe") and/or other employees of Defendant, PrimeCare and LCP. Defendants knew or should have known that decedent was still suicidal.

16. Decedent was thereupon placed in a single cell on cellblock C, which was the disciplinary block, otherwise known as "the hole".

17. The cell that the decedent was placed in was not "suicide proof", nor was it near the correctional officer station or equipped for either camera or audio monitoring by correctional staff.

18. At some point prior to this, the decedent was incorrectly advised that his mother had died, which made him very upset.

19. Upon decedent's arrival on C Block, the other inmates began to immediately harass and taunt the decedent due to the nature of the criminal charges he was committed on. (sexual abuse of a child)

20. Decedent announced that he intended to kill himself and he began to tear his sheets and tie them onto the bars of the cell.

21. It is believed and averred based upon the statements of several inmate witnesses that the decedent specifically told Defendant C/O Byrd of his intention to kill himself but that Defendant C/O Byrd indifferently walked away without ensuring for the decedent's immediate safety needs.

22. It is also believed and averred that one of the Defendant C/O Doe officers called for someone from the Mental Health/Mental Retardation department to come to the cell block in response to the decedent's announced intention to commit suicide. Unfortunately, no one responded until after the decedent's suicide.

23. Hearing decedent announce his attention to kill himself, some on the inmates loudly taunted him and encouraged him to kill himself while other inmates urged him not to.

24. When it appeared that the decedent was in the process of committing suicide, the inmates began to loudly bang on their cell bars and repeatedly call "Code Blue", which was a call for emergency response.

25. It is believed and averred that Defendant Correction Officers Byrd, Sheppos, Plumber and Does 6-10 were within sight and hearing of the decedent announcing his intention to commit suicide, the inmate taunts and threats to the decedent and the inmate screams of "Code Blue" seeking emergency assistance.

26. It is believed and averred that the aforementioned correctional staff did not respond for over fifteen to twenty minutes and not until inmate block worker Brandon Betancourt, who was on the cellblock cleaning, physically went to get Defendant C/O Byrd.

27. It is believed and averred that even after being told by Betancourt that one of the inmates was committing suicide, Defendant C/O Byrd responded with irritation and did not immediately call for medical or any other type of assistance.

28. Defendant C/O Byrd was observed by numerous inmates leisurely walking to the decedent's cell.

29. After finally arriving at the decedent's cell, Defendant C/O Byrd observed the decedent slumped against the cell bars on his knees. Upon seeing the decedent, Defendant C/O Byrd yelled at him to "Get the f*#% up".

30. It is believed and averred that Defendant C/O Byrd attempted, through the bars of the locked cell door to grab/push the decedent's body.

31. It was only after the above, that Defendant C/O Byrd went to get assistance and called a "Code Blue".

32. Defendant C/O Byrd returned to the decedent's cell with Defendants C/O Sheppo and Plumber, who proceeded to open the cell door, remove the sheet from around the decedent's neck and pull the decedent out of his cell.

33. Emergency medical personnel, including Defendant Nurse Dickert, ultimately arrived and concluded that the decedent had died. Defendant Nurse Dickert was overheard to exclaim "We shouldn't have taken him off suicide watch".

34. The decedent's body was permitted to lie on the filthy floor of the cell block in view of other inmates for several hours.

## COUNT I
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
## DEFENDANTS BYRD, SHEPPO, PLUMBER & DOES 5-10

35. Paragraphs 1 through 34, inclusive, are incorporated herein by reference, as though each were fully set forth herein at length.

36. Defendants were, at all times material, aware that decedent had a serious medical/psychiatric need: specifically, that decedent had a particular vulnerability to suicide.

37. Defendants were knowingly, intentionally, and recklessly, deliberately and maliciously indifferent to the serious medical/psychiatric needs of the decedent.

38. As a direct and proximate result of the Defendants' deliberate indifference to the decedent's serious medical needs the decedent was able to successfully commit suicide.

39. All of these actions violated the decedent's rights under the Fourteenth Amendment to the United States Constitution and the laws of the United States and the Commonwealth of Pennsylvania and is in violation of decedent's rights pursuant to 42 U.S.C. § 1983.

40. The above described actions of the Defendants in their individual capacities were so malicious, intentional and reckless and displayed such a reckless indifference to the decedent's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE,** pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against Defendants jointly and/or individually in an

amount in excess of One Hundred Thousand ($100,000.00) Dollars, plus interest, costs, attorney's fees and other appropriate relief.

## COUNT II
## DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS DEFENDANTS PRIMECARE MEDICAL, INC., DR. ROBERT DOE, NURSE CINDY DICKERT

41. Paragraphs 1 through 40, inclusive, are incorporated herein by reference, as though each were fully set forth herein at length.

42. Defendants were, at all times material, aware that decedent had a serious medical/psychiatric need: specifically, that decedent had a particular vulnerability to suicide.

43. By improvidently taking the decedent off suicide watch and permitting him to be moved to a single cell in disciplinary housing where they knew he would have access to the means and opportunity to commit suicide, Defendants were knowingly, intentionally, and recklessly and deliberately indifferent to the serious medical/psychiatric needs of the decedent.

44. Defendants additionally were deliberately indifferent to the decedent's constitutional rights by failing to timely respond to cellblock C to re-evaluate the decedent's suicidality after the decedent announced his intention to commit suicide.

45. As a direct and proximate result of the Defendants' deliberate indifference to the decedent's serious medical needs the decedent was able to successfully commit suicide.

46. All of these actions violated the decedent's rights under the Fourteenth Amendment to the United States Constitution and the laws of the United States and the Commonwealth of Pennsylvania and is in violation of decedent's rights pursuant to 42 U.S.C. § 1983.

47. The above described actions of the Defendants in their individual capacities were so malicious, intentional and reckless and displayed such a reckless indifference to the decedent's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against Defendants jointly and/or individually in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, plus interest, costs, attorney's fees and other appropriate relief.

**COUNT III**

**EXCESSIVE USE OF FORCE**

**DEFENDANTS JACOBS AND OFFICERS DOE 1-5**

48. Paragraphs 1 through 47, inclusive, are incorporated herein by reference, as though each were fully set forth herein at length.

49. Defendant corrections officers unlawfully used unjustified and excessive physical force against the decedent causing him physical injury.

50. The above described actions of the Defendants in their individual capacities were so malicious, intentional and reckless and displayed such a reckless indifference to the decedent's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against Defendants jointly and/or individually in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, plus interest, costs, attorney's fees and other appropriate relief.

## COUNT IV
## PRACTICE AND/OR CUSTOM OF VIOLATING CONSTITUTIONAL RIGHTS
## LANCASTER COUNTY, WARDEN GUIARDINO

51. Paragraphs 1 through 50, inclusive, are incorporated herein by reference as though each were fully set forth below.

52. The Plaintiff believes, and therefore avers, that the Defendants have adopted and maintained for many years a recognized and accepted policy, custom and /or practice of condoning and/or the acquiescing to the violation of the constitutional rights of inmates, including, but not limited to, a custom and/or practice of:

a. Maintaining a culture of abuse where correctional staff permit and/or incite inmates to taunt, harass and otherwise commit violent acts against other inmates, particularly inmates who have been charged with crimes against children.

b. Maintaining a culture of abuse where correctional staff are permitted to themselves assault/use excessive force on inmates without fear of discipline or other repercussion;

c. Maintaining an atmosphere where correctional staff deliberately disregard indicators of inmate suicidality;

d. Maintaining a policy, practice and custom of failing to ensure that inmates receive timely, necessary and appropriate medical/psychiatric treatment; and,

e. Maintaining an atmosphere where correctional staff are deliberately indifferent to the need for and the proper administration of immediate emergency medical response to suicides.

53. The Plaintiff believes, and therefore avers, that at the time of this incident, Defendant policymakers knew or should have known of the above described policies, practices and/or customs and that they deliberately, knowingly, and/or intentionally failed to take measures to stop or limit the policies, practices and/or customs, including, inter alia, providing proper supervision, discipline and control of the officers, agents, and/or employees at LCP.

54. By failing to take action to stop or limit the policies, practices and/or customs described above and/or by remaining deliberately indifferent to the systematic abuses which it is believed and averred have occurred, Defendants have condoned, acquiesced, participated in, and perpetrated the violation of the Plaintiffs' constitutional rights under the Constitution of the United States, the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania..

55. As a direct and proximate result of the intentional, deliberate and reckless actions of the Defendants, the decedent, Luis Villafane, died as set forth above.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiffs demand compensatory damages against Defendants in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT V
## PRACTICE AND/OR CUSTOM OF VIOLATING CONSTITUTIONAL RIGHTS
## PRIMECARE

56. Paragraphs 1 through 55, inclusive, are incorporated herein by reference as though each were fully set forth below.

57. The Plaintiff believes and therefore avers, that the Defendant PrimeCare Medical, Inc. has adopted and maintained for many years a recognized and accepted policy, custom and /or practice of condoning and/or the acquiescing to the violation of the

constitutional rights of inmates, including, but not limited to, a custom and/or practice of:

    a. Discharging inmates from suicide watch who are not medically/psychologically ready to be discharged;

    b. Discharging inmates from suicide watch based solely upon the inmate's own self-serving request to be discharged;

    c. Discharging inmates from suicide watch to be celled in a non-suicide proof isolation cell where there is limited correctional officer supervision and the inmate is permitted the means and opportunity to commit suicide; and,

    d. Failing to timely respond to requests made by correctional staff to come to the cellblock to evaluate/treat potentially suicidal inmates

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiffs demand compensatory damages against Defendants in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, plus interest, costs, attorney's fees and delay damages.

## COUNT VI
## MEDICAL MALPRACTICE/NEGLIGENCE
## PRIMECARE

58. Paragraphs 1 through 57, inclusive, are incorporated herein by reference as though each were fully set forth below.

59. Defendants owed a common law duty of care to the decedent. Their treatment of the decedent's suicide related psychiatric problems fell below acceptable standards for such care in the community.

60. Accordingly, based upon the above facts, Defendants were, at a minimum, negligent in their care and treatment of the decedent's suicidality.

61. The above described actions of the Defendant were so malicious, intentional and reckless and displayed such a reckless indifference to the decedent's rights and well-being, that the imposition of punitive damages is warranted.

WHEREFORE, Plaintiffs demand compensatory and punitive damages against Defendant PrimeCare Medical, Inc. in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, plus interest and costs.

RESPECTFULLY SUBMITTED,

BY: _____

TERI B. HIMEBAUGH, ESQUIRE

JEFFREY PHILIP PAUL, ESQUIRE